The bill alleged that the plaintiff Sarah, then Sarah Albright, was a widow, living in the county of Guilford, and had agreed with the other plaintiff, Jacob Rich, to go to the county of Alamance, near where he lived, and on Thursday the 8th day of October, 1857, they were to be married; that on the monday [Monday] previous to the marriage, the defendant, Thomas, with the co-operation and assistance of the defendant Whittington, and in combination with the other defendant, Dunn, by artful and deceitful representations, and with a view of cheating and defrauding the defendant Rich of his marital rights, persuaded and induced the plaintiff Sarah, to convey to him, Thomas, her dower, in a large and valuable tract of land, worth $2500, *Page 72 
for a sum much under its real value, to wit: for two hundred dollars a year for nine years, unless she should die within that time, when the annual payments were to stop, and he was to pay no more; that one of the means resorted to for procuring her to execute this conveyance, was an assurance that it was to be subject to the ratification of her intended husband, and that it was not to be registered before he should be consulted, and should sanction the contract; that not being satisfied with the conveyance thus obtained, they Thomas and Whittington intercepted her at Greensboro', on the morning of the marriage, on her way to the place appointed for the marriage, and under the pretext that the writing she had given was not correct, there prevailed on her to sign and execute another instrument to the same purport and effect as the former, but still subject to the same understanding and agreement as to the assent and ratification of the plaintiff Rich, and the promise that it should not be registered before he could be consulted on this point; but in total disregard of that agreement, she had scarcely arrived at the railroad station, where she took the cars upon the journey she was pursuing, when the defendant carried the deed into the court house and had it proved by Whittington, who was the subscribing witness, and that very shortly thereafter, it was registered; that after the marriage, in less than a week, the plaintiffs went to Guilford County, and the plaintiff Rich denounced the transaction as a fraud upon his rights, refused to give possession of the land, and they both demanded the surrender of the deed according to the previous agreement, which was refused by the defendants, and an action of ejectment was brought against them for the recovery of the possession of the premises. The prayer of the bill is for an injunction to stay the proceedings in the action of ejectment, and for a surrender of the deed.
The defendants answered, denying the fraud, and asserting that Thomas, alone, was the purchaser of Mrs. Albright's dower in the land; that he afterwards let in Dunn as a co-partner in the purchase; that the trade was made at the instance and request of the feme plaintiff, and the price to be paid was the *Page 73 
value of the plaintiff's life interest; that Mrs. Albright, (now Rich) told Thomas, before the marriage, that it was arranged between her and her intended husband, that she was to sell her dower interest in Guilford, and they were to live on the husband's plantation in Alamance; and that after the marriage, when Rich was complaining of the transaction, he did not deny but that such an arrangement was agreed on between them; that Whittington had no interest whatever in the transaction, but was called on, at the special instance and request of Mrs. Albright, to do the writing in the first instance, but that not having a full description of the land, he designated it by calling for the adjoining tracts; that not being altogether satisfied with what he had done, in this respect, having been furnished with a more particular description of the boundaries, he wrote another deed, in all things similar to the former, with this correction in the boundaries, and having sent word to the bargainor, Mrs. A., she called in his office in Greensboro', on her way to the railroad station, on the morning before the marriage, and without hesitation, executed the new deed which was witnessed by Whittington; that there was no promise, or agreement that the deed should be submitted for the ratification of the intended husband, and no promise that it should not be registered before he could be consulted.
Upon the coming in of this answer, the defendants counsel moved for the dissolution, which, upon argument, was refused by the Court, from which the defendant appealed.
There is no error in the interlocutory order appealed from. The answer does not respond to the allegation that the feme plaintiff was hurried into the completion of the sale, and the execution of the deed on the eve of her starting from home for the purpose of being married. No reason, or cause, is suggested for the hot haste with which the transaction was closed, and there is room to infer that the real motive *Page 74 
for it was a fear that the intended husband would not assent to the terms upon which the feme plaintiff had been induced to dispose of her estate. It may be, that the plaintiffs had, in anticipation of their marriage, arranged their plans for the future, by which the wife's estate was to be sold, and they should live together on the land of the husband, in Alamance, but, it is very certain that the plaintiff, Rich, was not privy, and did not assent to the particular transaction which is now called in question, as being in fraud of his marital rights. — Whether he had agreed that his intended wife might sell her estate before marriage in such a manner as to amount to a general assent, so as to make her act binding upon him, must depend upon the proofs. It was proper to continue the injunction to the final hearing.
PER CURIAM. Decretal order affirmed.